## Paul *versus* Kennedy.

1. It is the duty of an administrator, selling personal property on time, with approved security, to see to the solvency and ability of the security to pay.
2. If a man's reputation for ability to pay is against him, this is enough to justify an administrator in refusing him as security.

Error to the Court of Common Pleas of *Greene county.*

This action was brought by Nathaniel Paul, against David Kennedy, and Spicer Roberts, who were executors of David Kennedy, deceased, for an alleged breach of contract. Defendants, as executors, sold the personal property of their testator at public vendue, at which time and place they gave notice that "any person or persons buying property at this sale, to the amount of five dollars and upwards, shall have a credit of twelve months, by giving their judgment notes with *approved* security," &c.

Paul purchased, at the sale, a horse and two stacks of hay. He was unable to give the security at the time of the sale, and asked of the administrators to permit him to take the note home with him, to get the requisite security, promising them if they would agree to do so, he would pay for the keeping of the property, and return the note on the next Thursday, with Jesse Bussey as security.

The administrators, believing they had made the very best sale

[Paul *v.* Kennedy.]

they could, and desiring to accommodate Paul, agreed to wait, if Paul would give Bussey as security. But instead of giving Bussey, he returned the note with George Paul, his father, as security. His litigious character and alleged insolvency, induced defendant to refuse to receive the note and deliver the property. In answer to defendant's point, the court, GILMORE, P., charged the jury, that "where the security offered had a doubtful character for solvency, or ability, *whether this character was true or false, this would justify the defendant in refusing him as security.*" And, also, that, "although from the evidence of Brice, Howard, and Esquire Stewart, no objection was made by Kennedy to the security, only because he considered him a lawing character, *this would not preclude him now from setting up any other objection, such as would show he was not approved security.*"

*Downey* and *Lazear,* for plaintiff in error:
Referred to *Guier* v. *Page,* 4 S. R. 1; *Mills* v. *Hunt,* 20 Wend. 431; 1 T. & H. Prac. 299; 1 Chit. R. 676; 5 B. & Ad. 641.

*Lindsey* and *Buchanan,* for defendant in error:
Referred to *Billington's Appeal,* 3 R. 57; *Johnson's Estate,* 9 W. & S. 108; *Wiley's Appeal,* 8 Id. 426; *Keeler* v. *Vantwyle,* 6 B. 253; *Commonwealth* v. *Moltz,* 10 Id. 531.

The opinion of the court was delivered November 24, 1856, by LOWRIE, J.—It is the duty of administrators, when selling the personal property of their decedents on time, with approved security, to see that the surety is not of doubtful character for solvency and ability to pay, and, therefore, the purchaser is bound to offer sureties that are not subject to this objection. Was this duty satisfied by the fact of ability without the character, or was it waived by the objection that the surety was a lawing character? We think not. The only mode of ascertaining a man's ability that is readily practicable for such purposes, is by inquiring into his reputation for ability, and if that is against him, it is enough. Specific as was the objection to the surety, it meant that he was insufficient, and this left on the purchaser the duty of seeing to his sufficiency. If other circumstances had shown that the objection was a mere sham, intended as a cover for a refusal to carry out the contract, the case would have been different. 17 Wend. 337. A refusal to carry out the contract would dispense with the necessity of a tender on the part of him who sues for its breach.

Judgment affirmed, and record remitted.